## APPEAL OF SALLIE M. WORTHAM.

Docket No. 2902.   Submitted October 15, 1925.   Decided April 19, 1926.

1. Evidence *held* insufficient to disturb the determination of the Commissioner that certain promissory notes, secured by real property, received by the taxpayer in 1918 as part payment for the

sale of certain land, were worth their full face value in 1918, and should, therefore, be included in the computation of the gain realized from the sale.

2. Depreciation disallowed for lack of evidence.

*Robert Ash, Esq.*, and *R. L. Crofton, C. P. A.*, for the taxpayer.
*Ward Loveless, Esq.*, for the Commissioner.

Before MARQUETTE and LOVE.

This is an appeal from the determination of a deficiency for the year 1918 in the amount of $15,168.10. The taxpayer assigns error on the part of the Commissioner: (1) In attributing a gain to the sale of a certain cotton plantation, and (2) in refusing to allow depreciation claimed by the taxpayer on buildings.

This appeal was consolidated with the appeal of S. T. Shaw, Docket No. 3359, for the purpose of taking testimony by depositions, as both appeals involved the same facts. At the hearing, it appearing that the said S. T. Shaw had, in the meantime, paid the tax, his appeal was dismissed. Jurisdictional pleas made by the Commissioner were denied at the hearing.

FINDINGS OF FACT.

The taxpayer is an individual residing in Greenville, Miss. From 1900 to 1915 she was the owner of a large cotton plantation, consisting of 1,452 acres. The plantation was known as the "Waco Plantation." In 1915 the taxpayer formed a partnership with S. T. Shaw, under the name of Wortham & Shaw, for the purpose of operating this plantation. Shaw was an experienced plantation manager and personally managed the farm. Sallie M. Wortham left all her business affairs in the hands of her husband, E. R. Wortham. In 1915 Shaw paid $25,000 for an undivided one-half interest in the above-described plantation. The payment was made in notes, of which $20,460 was still unpaid in 1918, prior to the sale to Smith, hereinafter set forth.

In the year 1918 the taxpayer and Shaw sold the place to Frank T. Smith for $123,419.98, upon terms of $25,000 cash, and 17 notes for $90,419.98, extending over a period of eight years and bearing 6 per cent interest. These notes were secured by a deed of trust on the land, with the provision that certain portions of the plantation could be sold by Smith and notes of the new purchaser substituted for Smith's notes, with the further provision that the notes should not be less than $60 per acre valuation and a cash payment of $30 should be paid for each acre and the sale price of the land should not be less than $90 per acre. The pertinent parts of the trust deed in relation to the above provisions were as follows:

It is one of the considerations of this conveyance that the grantor herein, Frank T. Smith, his heirs, executors, administrators, and assigns, may sell and convey any portion, parcel or part or all of the lands herein conveyed in trust which lie south of the Greenville and Leland road running thru said Waco Plantation in an easterly and westerly direction, provided that no part of said lands shall be sold and conveyed by the said Frank T. Smith or his successors or assigns, as herein provided, for less than Ninety Dollars ($90) per acre; and in the event that the said Frank T. Smith, his successors or assigns, shall make sale of said lands or any part or portion thereof, the said Sallie M. Wortham and S. T. Shaw jointly and severally for themselves, their successors and assigns, hereby agree and it is one of the considerations of this deed of trust that Ben F. Wasson, the trustee herein named or his successor or successors in trust shall release all or any portion of said lands so sold by the said Frank T. Smith upon the payment to the said trustee or his successor or successors in trust of the full amount of the cash payment made to the said Frank T. Smith, and notes secured by trust deed upon the lands to be released in an amount not exceeding Sixty Dollars ($60) per acre, said cash and such notes so secured by trust deed on said lands so sold by the [said] Frank T. Smith, or his successors or assigns, to aggregate at least Ninety Dollars ($90) per acre; and upon the payment of said cash and notes in amount of not less than Ninety Dollars ($90) per acre as herein provided, the said trustee and his successor in trust, shall thereupon credit the amount so paid upon the notes of said Frank T. Smith herein described, making the application upon the note or notes in the order of their several maturities, the said trustee or his successors in trust, to make the application of said payment so made by the said Frank T. Smith to the said Sallie M. Wortham or S. T. Shaw, or their successors or assigns, in the same proportion in which the notes herein described are held by said Wortham and Shaw, but it shall not be required of the said Frank T. Smith that he shall see to or be responsible for the proper application of said payments as he may make as herein provided, but the trustee shall give the said Frank T. Smith credit and release each tract, piece or parcel of land as may be sold and payments made in cash and notes of amounts and in the manner herein provided; and said trustee and his successors in trust, are authorized, empowered and directed to make full and complete release of all of said lands so sold by the said Frank T. Smith upon the demand of the said Frank T. Smith, his successors and assigns, when accompanied by cash and notes as herein provided.

The 17 notes executed by the said Smith were as follows:

| Payee. | Amount. | Payable. | Payee. | Amount. | Payable. |
|---|---|---|---|---|---|
| Sallie M. Wortham | $11,126.00 | Mar. 1, 1919 | Sallie M. Wortham | $8,358.57 | Jan. 1, 1924 |
| S. T. Shaw | 3,847.00 | Do. | Do. | 8,358.57 | Jan. 1, 1925 |
| Sallie M. Wortham and S. T. Shaw | 3,130.00 | Jan. 1, 1920 | Do. | 8,358.57 | Jan. 1, 1926 |
| S. T. Shaw | 1,943.58 | Do. | S. T. Shaw | 3,558.57 | Jan. 1, 1921 |
| Sallie M. Wortham | 6,843.58 | Do. | Do. | 3,558.57 | Jan. 1, 1922 |
| Do. | 8,358.57 | Jan. 1, 1921 | Do. | 3,558.57 | Jan. 1, 1923 |
| Do. | 8,358.57 | Jan. 1, 1922 | Do. | 3,558.57 | Jan. 1, 1924 |
| Do. | 8,358.57 | Jan. 1, 1923 | Do. | 3,558.57 | Jan. 1, 1925 |
|  |  |  | Do. | 3,558.57 | Jan. 1, 1926 |

The taxpayer was given a larger amount in notes than Shaw to make up for the balance due her from Shaw. She extinguished Shaw's debt to her, accepting such notes at their full face value.

The broker's fee for selling the property was $8,130, of which $5,000 was paid in cash and the balance of $3,130 was paid with one of Smith's notes, which was accepted by the real estate agents at its full face value. In 1918 Smith resold 300 acres of the land for $26,642.92, for which he received $7,000 cash and $19,642.92 in notes extending over a period of five years, which were turned over to the trustees who canceled Smith's notes in a like amount. This sum of $7,000, together with the $25,000 initial payment, or a total of $32,000, was received by the taxpayer within the taxable year and was in excess of one-fourth of the purchase price. In 1919 Smith also sold 171½ acres for $19,437.50, at the rate of $114 per acre. This sum was also paid in cash and notes for which the trustee canceled a like amount of the notes of Smith.

After the sale of the plantation by Wortham and Shaw to Smith in 1918, Shaw went into partnership with E. R. Wortham, husband of the taxpayer, and purchased and operated a plantation in Louisiana. In 1919, this plantation having suffered a loss and the partners being obligated to make certain cash payments, and Shaw being unable to pay his portion, E. R. Wortham paid the obligations, and, to reimburse himself for Shaw's share, took notes of Smith at their full face value.

There was no evidence that Sallie M. Wortham, the taxpayer, E. R. Wortham, or S. T. Shaw, undertook or attempted to sell any of Smith's notes in 1918 or subsequent years. Several years after the sale E. R. Wortham negotiated with the bank for the sale of one of the notes at a heavy discount, but was unsuccessful.

During the year 1918, there was a boom in the cotton business. High prices for cotton caused an unusual demand for cotton land. This demand caused an increase in the value of land, which resulted in many transfers and sales at high prices. Land which was normally worth $40 to $60 an acre went up in some instances as high as $200 and $300 per acre. The taxpayer's land, valued in 1913 and 1915 at $35 per acre, was, as hereinabove set forth, sold to Smith at $85 per acre, and he in turn sold portions of it for $88 and $114 per acre in 1918 and 1919. The sales, however, were usually made in consideration of a small proportion of the price being paid in cash and the balance in notes secured by the land. The boom was followed by a depression in cotton prices, so that by 1921 the land was a drug on the market and many cotton farmers failed and lost their land. Smith, however, did not abandon the property in question until the spring of 1925. Those who purchased the land from Smith abandoned their land.

The Commissioner treated the sale of land to Smith as a transaction giving rise to a taxable gain for 1918, and, in determining

the gain resulting from the sale, valued the notes at their full face value.

The taxpayer also claimed depreciation on buildings which she rented, but there was no evidence as to their March 1, 1913, value or the depreciation thereon.

### OPINION.

LOVE: The principal issue in this case is whether the Commissioner erred in treating the sale in question as a closed transaction in 1918, and in including in the computation of the gain the full face value of the secured notes. The Commissioner's position is based upon the assumption that the secured notes were worth their full face value. The burden is upon the taxpayer to prove the notes did not have the market value attributed to them. *Appeal of Aaron W. Wolfson*, 1 B. T. A. 538; *Appeal of W. B. Packman*, 2 B. T. A. 508. This is not an installment sale within the purview of section 212 (d) of the Revenue Act of 1926, as the initial payments were in excess of one-fourth of the purchase price.

The taxpayer contends that the land was sold for an abnormally high price and that the notes were only secured by land which would require a market value of at least $70 per acre to amply secure them, and that the land was not in fact worth that amount. There is no evidence that any of the parties attempted to dispose of the notes to any of the banks or in the open market. However, it appears that, in all the transactions in which the notes played a part, they were taken at their full face value. In 1918 the taxpayer accepted $20,460 of the notes for the extinguishment of the debt of S. T. Shaw to her. Brokers who sold the land accepted $3,130 of the notes at their full face value as part of their commission. In 1919 E. R. Wortham accepted the Smith notes (the amount of which is not disclosed) at their full face value in payment of the debt of Shaw arising from a partnership transaction. It also appears that $26,642.92 of the notes was paid in cash and other notes within the year 1918, and that $19,437.50 was likewise retired in 1919. The substituted notes, moreover, were secured by the same land.

The taxpayer, in support of her contention, introduced the testimony of a number of witnesses, who testified to the value of the land and the poor market conditions for such notes in 1918. However, as pointed out by the Commissioner, there has been no evidence as to the financial responsibility in 1918 of the maker of the notes, which is an essential factor. In fact, the taxpayer's witnesses were particular to specify that they knew nothing detrimental to his financial standing, and one important witness for the taxpayer went so far as to state that the financial standing of the maker was con-

sidered good during the year in question. This is corroborated to some extent by the fact that, even under the trying conditions following the cotton depression, the maker of the notes stayed with the land until the spring of 1925, and there is no evidence that he did not promptly meet the payments as they became due. The taxpayer testified that she personally had never seen any of the notes, knew nothing about them, and did not know whether or not any were outstanding.

So far as 1918 is concerned, the evidence is convincing that even the land itself was ample security for the notes. In fact, a portion of the same tract was sold at $88 per acre, and in 1919 a tract was sold at $114 per acre. There was evidence of sales of near-by cotton lands at even higher prices. We are of the opinion that the taxpayer has failed to prove that the notes in question did not have the market value the Commissioner attributed to them in 1918, and that their face value should be included in the computation of gain resulting from the sale.

The taxpayer, in her petition, alleged error on the part of the Commissioner in not allowing certain depreciation on buildings she owned for rental purposes. No evidence was presented as to their March 1, 1913 value or any other sufficient information upon which the depreciation, if any, could be ascertained. The Commissioner's determination in this respect should not be disturbed.

*The deficiency is $15,168.10. Order will be entered accordingly.*